**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| ADOLF SENFT, MD, and JANET SENFT, Husband and Wife,<br><br>                 Plaintiffs,<br>      v.<br><br>FIREMAN'S FUND INSURANCE COMPANY; ABC COMPANIES 1-10 (fictitious entities); and JOHN DOES 1-20 (fictitious persons);<br><br>               Defendants. | **OPINION**<br><br>Civ. No. 14-07805 (WHW) (CLW) |

**Walls, Senior District Judge**

In this insurance coverage dispute arising from Hurricane Sandy, Defendant Fireman's Fund Insurance Company ("FFIC") moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiffs' claims for breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, unjust enrichment, and attorneys' fees. Without oral argument under Federal Rule of Civil Procedure 78(b), FFIC's motion is granted in part and denied in part.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Adolf Senft, M.D. and Janet Senft, New Jersey citizens whose waterfront home in Mantoloking, New Jersey was destroyed during Hurricane Sandy, initiated this action against FFIC in New Jersey Superior Court on October 28, 2014.[1] Compl., ECF No. 1-1. FFIC, a California corporation with its principal place of business in California, invoked this Court's diversity jurisdiction and removed the case here on December 15, 2014. Notice of Removal, ECF No. 1.

---

[1] The Court notes, as informed by Plaintiffs' counsel, that Dr. Senft passed away on December 12, 2014.

NOT FOR PUBLICATION

Plaintiffs' complaint alleges that protecting their home was "a paramount concern" for them because of its waterfront location and significant customization to "maximize Dr. Senft's personal independence despite his disabilities." Compl. ¶¶ 8-9. Plaintiffs state that they purchased FFIC's "Prestige Home Premier Policy" on the basis of FFIC's and its brokers' representations that the policy would provide coverage in the event of a hurricane, the "highest level of protection" offered by FFIC, and "exceptional" services in the event of a catastrophe. *Id.* ¶¶ 10-12. Plaintiffs state that they paid FFIC premiums "as high as nearly $10,000 per year" from 1996 through 2012, which included a 2% "hurricane deductible" because of the home's proximity to the ocean. *Id.* ¶¶ 12-13.

Plaintiffs contend that when Hurricane Sandy struck on October 29, 2012, their home "was pounded for hours by unrelenting hurricane-force winds and rain" and that a neighbor watched as the "winds blew out the French doors on the second floor of Plaintiffs' home, and then uprooted and knocked down trees, causing them to collide with the structure." *Id.* ¶ 15. Plaintiffs assert that their home "fell victim to Sandy long before the storm surge overcame the dune barrier and reached the structure." *Id.*

After the storm, Plaintiffs allege that FFIC "wasted no time in distancing itself from the catastrophe" and "rejected Plaintiffs' claim in its entirety" without visiting or inspecting their property. *Id.* ¶¶ 18-19. After Plaintiffs protested, an FFIC representative inspected their property in a "brief and purely superficial" manner that "completely disregarded the first-hand report of the wind and rain damage that occurred during the early stages of the storm . . . ; made no mention of the fallen and/or uprooted trees; and simply refused to examine the interior portions of the house ravaged by the pre-surge, wind-blown rains." *Id.* ¶ 21. Plaintiffs indicate that "FFIC cited the subsequent storm surge as the sole cause of the devastation." *Id.* ¶ 23.

2

**NOT FOR PUBLICATION**

Plaintiffs seek a declaratory judgment that they are entitled to coverage under their policy, and assert claims for bad faith, breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, and unjust enrichment. *Id.* at 8-15. FFIC moves to dismiss only Plaintiff's claims for breach of the implied covenant, breach of fiduciary duty, and unjust enrichment under Federal Rule of Civil Procedure 12(b)(6). Mot. to Dismiss, ECF No. 7. FFIC further seeks dismissal of Plaintiffs' claims for attorneys' fees. *Id.* FFIC contends that Plaintiffs' claim for breach of the implied covenant improperly duplicates their claim for bad faith; that FFIC owed no fiduciary duty to Plaintiffs; that Plaintiffs cannot claim unjust enrichment simultaneously with breach of contract; and that attorneys' fees are not recoverable. The Court addresses these arguments in turn.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotations and alterations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—that the pleader is entitled to relief." *Id.* at 679.

As the Third Circuit Court of Appeals has explained, the analysis "unfolds in three steps." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). "First, we outline the elements a plaintiff must

**NOT FOR PUBLICATION**

plead to state a claim for relief. Next, we peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth. Finally, we look for well-pled factual allegations, assume their veracity, and then 'determine whether they plausibly give rise to an entitlement to relief.'" *Id.* (citing and quoting *Iqbal*, 556 U.S. at 675-79, and *Argueta v. U.S. Immigration and Customs Enforcement*, 643 F.3d 60, 73 (3d Cir. 2011)). As a general matter, the court's inquiry "is not whether plaintiffs will ultimately prevail in a trial on the merits, but whether they should be afforded an opportunity to offer evidence in support of their claims." *In re Rockefeller Ctr. Prop., Inc.*, 311 F.3d 198, 215 (3d Cir. 2002).

## DISCUSSION

### 1.  Plaintiffs' Claim for Breach of the Implied Covenant Is Duplicative

FFIC argues that Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing should be dismissed because it is "identical, legally and factually, to their claim for Bad Faith." Def.'s Mem. 4, ECF No. 7-1. Plaintiffs argue that "legal and factual distinctions" separate the two claims. Pls.' Opp. 7, ECF No. 12.

When reviewing a pleading, the Court must "transcend superficialities and reach the substance of what is alleged and sought," regardless of "the label[s] a party affixes to its pleading." *Wood v. New Jersey Mfrs. Ins. Co.*, 21 A.3d 1131, 1139 (N.J. 2011). "It is well-recognized that a court may dismiss a duplicative claim in a complaint." *Slimm v. Bank of Am. Corp.*, Civ. No. 12-5846, 2013 WL 1867035, at *22 (D.N.J. May 2, 2013).

The New Jersey Supreme Court's treatment of bad faith claims demonstrates that they are the equivalent of claims for breach of the implied covenant of good faith and fair dealing. When the New Jersey Supreme Court first recognized a claim for "bad faith in the context of paying benefits under a[n insurance] policy," it did so on the grounds that "an insurance company owes a

4

**NOT FOR PUBLICATION**

duty of good faith to its insured in processing a first-party claim." *Pickett v. Lloyd's*, 621 A.2d 445, 457, 467 (N.J. 1993). The court characterized the bad faith cause of action as "best understood as one that sounds in contract." *Id.* at 452. In subsequent decisions, the New Jersey Supreme Court has specifically tied bad faith claims to the implied covenant of good faith and fair dealing, instructing that an insured's bad faith claim against an insurer "represents a traditional contract claim that the insurer breached the implied covenant of good faith and fair dealing." *Wood*, 21 A.3d at 1132; *see also Wadeer v. New Jersey Mfrs. Ins. Co.*, 110 A.3d 19, 26 (N.J. 2015) (characterizing an insurer's "duty of good faith to its insured in processing a first-party claim" as "an extension" of the implied covenant of good faith and fair dealing).

Plaintiffs contend that claims for breach of the implied covenant reach more conduct than claims of bad faith. They argue that a claim "for bad faith in the context of paying benefits under a policy is generally recognized in two fairly narrow instances: (1) the denial of a covered claim; and (2) an unreasonable delay in the processing of a paid claim." Pls.' Opp. 4 (citing *Pickett*, 621 A.2d at 481. Accordingly, Plaintiffs assert that their claim for breach of the implied covenant of good faith and fair dealing does not duplicate their claim for bad faith because the implied covenant claim "is much more expansive and all encompassing." *Id.*

The Court disagrees with Plaintiffs' contention that *Pickett* narrowed the scope of bad faith claims against insurers such that they may only encompass an insurer's bad faith coverage denials and payment delays. Nothing in *Pickett* explicitly restricts the scope of bad faith claims against insurers, and this interpretation contradicts the New Jersey Supreme Court's subsequent indications that bad faith claims are contract claims alleging breach of the implied covenant of good faith and fair dealing. *See Wood*, 21 A.3d at 1132. Contrary to Plaintiffs, the Court sees no legal distinction between Plaintiffs' bad faith and implied covenant claims. *See also Laing v. Am.*

5

NOT FOR PUBLICATION

*Strategic Ins. Corp.*, Civ. No. 14-1103, 2014 WL 4953250, at \*2 (D.N.J. Oct. 1, 2014) ("under New Jersey law, these two claims are tantamount to the same cause of action"). Nor is Plaintiffs' implied covenant claim saved by their argument that it addresses separate actions taken by FFIC from those addressed by Plaintiffs' bad faith claim. Pls.' Opp. 4-7. The facts alleged in Plaintiffs' complaint to support the two claims are all but identical. *Compare* Pls.' Opp. ¶¶ 8-10, *with id.* ¶¶ 19-20. The Court sees no reason why Plaintiffs cannot recover under their bad faith claim for any conduct which they believe underlies their claim for breach of the implied covenant. Because it is duplicative, Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing is dismissed.

### 2. Plaintiffs Adequately State a Claim for Breach of Fiduciary Duty

FFIC argues that Plaintiffs' claim for breach of fiduciary duty should be dismissed because the "first-party contractual relationship" between FFIC and Plaintiffs was not a fiduciary relationship. Def.'s Mem. 6-7. Plaintiffs counter that FFIC assumed a fiduciary duty by "counseling and advising" them about "coverage that would best suit their specific needs given the waterfront location of their home." Pls.' Opp. 7-8.

"A fiduciary relationship arises between two persons when one person is under a duty to act for or give advice for the benefit of another on matters within the scope of their relationship." *F.G. v. MacDonell*, 696 A.2d 697, 704 (N.J. 1997) (citing Restatement (Second) of Torts § 874 cmt. a (1979)). "The essence of a fiduciary relationship is that one party places trust and confidence in another who is in a dominant or superior position." *Id.* at 703-04. "A violation of that trust constitutes a breach of the duty." *Id.* at 704.

A "fiduciary duty may arise between an insurer and its insured in special circumstances." *Ellmex Const. Co. v. Republic Ins. Co.*, 494 A.2d 339, 345 (N.J. Super. Ct. App. Div. 1985). As

6

**NOT FOR PUBLICATION**

example, such a relationship arises when an insurer "reserve[s] the right to settle a third party claim" brought against its insured. *Rova Farms Resort, Inc. v. Investors Ins. Co. of Am.*, 323 A.2d 495 (N.J. 1974). A fiduciary relationship can also arise from an insurance agent's interactions with an insured. The New Jersey Supreme Court has held that the "relationship of insured and insurer, either agent or broker, is [a] fiduciary one, carrying with it affirmative duties toward the insured." *Pickett*, 621 A.2d at 467 (citing *Sobotor v. Prudential Property & Casualty Ins. Co.*, 200 N.J. Super. 333, 337-41 (N.J. Super. Ct. App. Div. 1984)); *see also Aden v. Fortsh*, 776 A.2d 792, 800 (N.J. 2001) (finding that insurance brokers "must act in a fiduciary capacity to the client because of the increasing complexity of the insurance industry and the specialized knowledge required to understand all of its intricacies.").

Plaintiffs here have adequately pled that FFIC owed them a fiduciary duty and breached it. The complaint alleges that "FFIC, independently and through its Brokers, affirmatively represented to Plaintiffs that the Prestige Home Premier Policy provided precisely the type of coverage that they desired and needed because, among other things, it provided coverage in the event of a hurricane or similar storm events to which the Mantoloking area was susceptible." Compl. ¶ 12. They also contend that they paid a 2% "hurricane deductible" because of their home's proximity to the ocean. *Id.* ¶ 12. These allegations about FFIC's representations to Plaintiffs make it plausible that FFIC owed them a fiduciary duty and breached it by failing to provide coverage for hurricane-related damages that Plaintiffs trusted FFIC to provide.

FFIC advances *Taddei v. State Farm Indem. Co.* for the proposition that "New Jersey courts have specifically declined to recognize the existence of a fiduciary relationship between the insured and insurer in the context of a first-party claim." Def.'s Mem. 6. While *Taddei* represents one case in which a New Jersey court determined that no fiduciary relationship existed between

**NOT FOR PUBLICATION**

an insurer and insured, on entirely different facts from those alleged here, it does not hold that a fiduciary relationship can never arise between an insurer and insured. *See Taddei v. State Farm Indem. Co.*, 951 A.2d 1041, 1047 (N.J. Super. Ct. App. Div. 2008). FFIC's brief misleadingly misquotes *Taddei* to stand for more than it does. Def.'s Mem. 6. The Court finds that Plaintiffs have adequately stated a claim for breach of fiduciary duty, and denies FFIC's motion to dismiss the cause of action.

### 3. Plaintiffs Cannot Maintain a Claim for Unjust Enrichment

FFIC contends that Plaintiffs' claim for unjust enrichment should be dismissed because "New Jersey law precludes [a] plaintiff from recovery on a quasi-contract theory" where an express contract exists. Def.'s Mem. 7. Plaintiffs counter that "federal law expressly permits . . . alternative pleading of claims arising out of the same set of operative facts." Pls.' Opp. 8.

To state a claim for unjust enrichment under New Jersey law, Plaintiffs must plead that FFIC was enriched in a manner not governed by any enforceable contract. *See, e.g., Estate of Gleiberman v. Hartford Life Ins. Co.*, 94 F. App'x 944, 947 (3d Cir. 2004) ("Claims for unjust enrichment and the corresponding remedy, restitution, are only supportable when the parties' rights are not governed by a valid, enforceable contract.") (citing *Suburban Transfer Serv., Inc. v. Beech Holdings, Inc.*, 716, F.2d 220, 226-27 (3d Cir. 1983)); *see also Donnelly v. Option One Mortgage Corp.*, Civ. No. 11-7019, 2014 WL 1266209, at *15 (D.N.J. Mar. 26, 2014) (holding that where a valid contract exists, a claim for unjust enrichment may only be asserted to extent the defendant was enriched beyond the scope of the contract).

Plaintiffs' complaint alleges that Plaintiffs and FFIC were parties to a valid insurance contract. Compl. ¶ 13. Plaintiffs do not allege that they conferred any benefit on FFIC other than by paying their policy premiums. Because the parties' rights and obligations are governed by their

NOT FOR PUBLICATION

insurance contract, unjust enrichment is not a viable theory of recovery for Plaintiffs. Albeit that federal law permits alternative pleading of claims, Plaintiffs' unjust enrichment fails as a matter of law and must be dismissed.

### 4. Attorneys' Fees

Each cause of action in Plaintiffs' complaint includes a claim for attorneys' fees. Compl. 8-15. In FFIC's initial brief supporting its motion to dismiss, FFIC sought dismissal of Plaintiffs' requests for attorneys' fees in Counts Two through Six, but not Plaintiffs' request for attorneys' fees in Count One. Def.'s Mem. 8-9. Plaintiffs responded that they do not oppose dismissal of their requests for attorneys' fees in Counts Two through Six "[b]ecause Defendant does not seek to dismiss the request for counsel fees with regard to the First Count." Pls.' Opp. 1 n.1. Because Plaintiffs offer no opposition, the Court dismisses Plaintiffs' claims for attorneys' fees in Counts Two through Six.

In FFIC's reply brief, FFIC argues for the first time that Plaintiffs' request for attorneys' fees in Count One should also be dismissed. Def.'s Reply 8, ECF No. 13. The Court declines to consider this argument because a "party's argument is waived if it is raised for the first time in a reply brief." *United States v. Heilman*, 377 F. App'x 157, 198 (3d Cir. 2010) (citing *Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 192 (3d Cir. 2005)).

## CONCLUSION

FFIC's motion to dismiss is granted in part and denied in part. An appropriate order follows.


Date: May 12, 2015

                                       **/s/ William H. Walls**
                                       United States Senior District Judge